## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SIAVOSH HENAREH,** | : | **CIVIL ACTION NO. 1:22-CV-1152** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **DR. T. CULLEN, DR. PFIRMAN,** | : | |
| **JOHN DOE,** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Plaintiff Siavosh Henareh ("Henareh"), an inmate housed at the Federal

Correctional Institution, Allenwood, Pennsylvania ("FCI-Allenwood"), filed this

<u>Bivens</u>[1] action pursuant to 28 U.S.C. § 1331, alleging that defendants violated his

First and Eighth Amendment rights.  (Doc. 1).  He names as defendants Dr. Cullen,

Physician Assistant Pfirman, and a John Doe individual.  (<u>Id.</u>)  Presently ripe for

disposition is a motion to dismiss pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6) by defendants Cullen and Pfirman.  (Doc. 15).  Pursuant to

Federal Rule of Civil Procedure 12(d), the motion will be treated as one for

summary judgment, and disposed of as provided in Rule 56, only with respect to the

---

[1] <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971).  A
<u>Bivens</u> civil rights action asserted under 28 U.S.C. § 1331 is evaluated using the
same standards applicable to a 42 U.S.C. § 1983 civil rights action.  <u>See</u> <u>Paton v.
LaPrade</u>, 524 F.2d 862, 871 (3d Cir. 1975).  To state a claim under <u>Bivens</u>, a plaintiff
must allege that he was deprived of a federal right by a person acting under color of
federal law.  <u>See</u> <u>Young v. Keohane</u>, 809 F. Supp. 1185, 1199 (M.D. Pa. 1992).

issue of exhaustion of administrative remedies.[2]  The remaining claims will be addressed under Rule 12(b).

As set forth below, the court will grant defendants' motion to dismiss and for summary judgment.  The court will also dismiss the action against the John Doe defendant pursuant to Federal Rule of Civil Procedure 4(m).

## I.   <u>Factual Background & Procedural History</u>

Henareh alleges that defendants refused to give him brand-name medication, rather than generic medication, in retaliation for filing civil lawsuits.  (Doc. 1 ¶¶ 6, 8-12).  In response to his request for a medication change, defendants allegedly accused Henareh of being a terrorist and being noncompliant with his medication regimen.  (<u>Id.</u> ¶¶ 7-8).

Henareh filed a grievance wherein he requested that his medication be changed from generic to brand-name.  (<u>Id.</u> ¶ 9).  After Henareh filed his grievance, he alleges that defendants acted aggressively towards him and attempted to kill him by administering the wrong medication.  (<u>Id.</u> ¶¶ 9, 11).

---

[2]  On April 12, 2023, the court issued an order converting the motion to dismiss into a motion for summary judgment under Rule 56 with respect to the issue of exhaustion of administrative remedies.  (Doc. 21).  Because defendants raised the issue of exhaustion of administrative remedies, the court also notified the parties that it would consider exhaustion in its role as factfinder in accordance with <u>Paladino v. Newsome</u>, 885 F.3d 203 (3d Cir. 2018) and <u>Small v. Camden Cty.</u>, 728 F.3d 265 (3d Cir. 2013), and afforded the parties the opportunity to supplement the record with any additional evidence relevant to exhaustion of administrative remedies.  (Doc. 21).

Henareh also alleges that defendants ordered the John Doe individual to retaliate against him, threatened to place him in solitary confinement, provided false information about his medication, and labeled him a terrorist.  (Id. ¶ 10).

Lastly, Henareh alleges that defendants were deliberately indifferent to his medical condition by denying his "reasonable requests for medical treatment."  (Id. ¶ 13).  He seeks injunctive and declaratory relief.  (See Doc. 1).

Defendants move for dismissal, and summary judgment, on the following grounds: (1) sovereign immunity bars the court's subject matter jurisdiction over Henareh's official capacity claims; (2) Henareh failed to exhaust his administrative remedies; and (3) even if Henareh had properly exhausted his administrative remedies, his retaliation claim is not a valid context for a Bivens claim and he failed to state a cognizable deliberate indifference claim.  (Doc. 16).  The motion is ripe for resolution.

## II.   Rule 12(b)(1) Motion

### A.   Legal Standard

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a claim for lack of subject matter jurisdiction.  See FED. R. CIV. P. 12(b)(1).  Such jurisdictional challenges take one of two forms: (1) parties may levy a "factual" attack, arguing that one or more of the pleading's factual allegations are untrue, removing the action from the court's jurisdictional ken; or (2) they may assert a "facial" challenge, which assumes the veracity of the complaint's allegations but nonetheless argues that a claim is not within the court's jurisdiction.  See Lincoln

Benefit Life Co. v. AEI Life, LLC, 800 F.3d 99, 105 (3d Cir. 2015) (quoting CAN v. United States, 535 F.3d 132, 139 (3d Cir. 2008)).  In either instance, it is the plaintiff's burden to establish jurisdiction.  See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

  **B.** **Discussion**

  Defendants first argue that Henareh's Bivens claims against them in their official capacities are barred by sovereign immunity.  (Doc. 16 at 11-13).  Sovereign immunity bars any claims brought against the defendants in their official capacities. Specifically, sovereign immunity constitutes a jurisdictional bar to claims against the United States and its agencies, unless Congress has specifically waived such immunity.  FDIC v. Meyer, 510 U.S. 471, 475 (1994).  "An action against government officials in their official capacities constitutes an action against the United States [and is] barred by sovereign immunity, absent an explicit waiver."  Lewal v. Ali, 289 F. App'x 515, 516 (3d Cir. 2008); Webb v. Desan, 250 F. App'x 468, 471 (3d Cir. 2007).[3]

  Bivens does not waive sovereign immunity with respect to claims brought against federal employees sued in their official capacities.  Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 72 (2001) ("If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a Bivens claim against the offending individual officer, subject to the defense of qualified immunity.  The

---

[3] The court acknowledges that nonprecedential decisions are not binding upon federal district courts.  Citations to nonprecedential decisions reflect that the court has carefully considered and is persuaded by the panel's *ratio decidendi*.

4

prisoner may not bring a <u>Bivens</u> claim against the officer's employer, the

United States, or the BOP.").  Thus, Henareh's claims against the defendants

in their official capacities are barred by sovereign immunity and will be

dismissed for lack of jurisdiction.  <u>Lewal</u>, 289 F. App'x at 516; <u>Webb</u>, 250 F.

App'x at 471.

**III.**   <u>**Rule 56 Motion**</u>

    **A.**   **Legal Standard**

Through summary adjudication, the court may dispose of those claims that

do not present a "genuine dispute as to any material fact" and for which a jury trial

would be an empty and unnecessary formality.  FED. R. CIV. P. 56(a).  The burden of

proof tasks the non-moving party to come forth with "affirmative evidence, beyond

the allegations of the pleadings," in support of its right to relief.  <u>Pappas v. City of</u>

<u>Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); <u>see</u> <u>also</u> <u>Celotex Corp. v. Catrett</u>,

477 U.S. 317, 322-23 (1986).  The court is to view the evidence "in the light most

favorable to the non-moving party and draw all reasonable inferences in that party's

favor."  <u>Thomas v. Cumberland County</u>, 749 F.3d 217, 222 (3d Cir. 2014).  This

evidence must be adequate, as a matter of law, to sustain a judgment in favor of the

non-moving party on the claims.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-

57 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89

(1986).  Only if this threshold is met may the cause of action proceed.  <u>See</u> <u>Pappas</u>,

331 F. Supp. 2d at 315.

**B.      Statement of Undisputed Facts[4]**

The Bureau of Prisons ("BOP") tracks formal administrative remedy filings through its computerized database known as SENTRY.  (Doc. 24 ¶ 4).  According to SENTRY, Henareh has filed nineteen administrative remedies while in BOP custody.  (Id. ¶ 5).  On April 18, 2022, Henareh first attempted to informally resolve his request to change his generic medication to a brand-name medication.  (Id. ¶ 6).  On April 19, 2022, the informal request was denied and Henareh was advised that his "medical records show[] no clinical indications to justify changing the medication that [he has] been taking since 2015."  (Id.)

On May 9, 2022, Henareh filed administrative remedy 1119604-F1 at the institution level requesting that his generic medication be changed to the brand-name medication.  (Id. ¶ 8).  On May 10, 2022, the Warden denied administrative remedy 1119604-F1.  (Id. ¶ 9).  On May 31, 2022, Henareh appealed to the Regional Director, designated as administrative remedy 1119604-R1.  (Id. ¶ 10).  The Regional Director rejected the appeal because it was not legible in its entirety and advised

---

[4]  Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  Id.  Although Henareh filed a response (Doc. 25) to defendants' statement of material facts, he does not specifically dispute the facts set forth in defendants' statement (Doc. 24).  Therefore, unless otherwise noted, the factual background herein derives from defendants' Rule 56.1 statement of material facts and exhibits.  (Doc. 24).

Henareh to resubmit his appeal within ten days.  (Doc. 24-1, at 3, Declaration of

Jennifer Knepper ("Knepper Decl.") ¶ 7).  Instead of refiling administrative remedy

1119604-R1, Henareh submitted a new filing at the institution level on June 15, 2022,

designated as administrative remedy 1123592-F1, wherein he requested brand-

name medication and alleged staff complaints.  (Id.)  On June 15, 2022,

administrative remedy 1123592-F1 was rejected because it contained multiple

issues.  (Id.)  Henareh was advised to properly refile.  (Id.)  Henareh did not refile

the administrative remedy.  (Id.)

### C.    Discussion

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is

required to pursue all avenues of relief available within the prison's grievance

system before bringing a federal civil rights action concerning prison conditions.

See 42 U.S.C. § 1997e(a); Booth v. Churner, 206 F.3d 289, 291 (3d Cir. 2000).  Section

1997e(a) establishes the requirement of administrative exhaustion:

> No action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The PLRA "exhaustion requirement applies to all inmate suits about prison

life, whether they involve general circumstances or particular episodes, and

whether they allege excessive force or some other wrong."  Porter v. Nussle, 534

U.S. 516, 532 (2002).  It has been made clear that the exhaustion requirement is

mandatory.  See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth v. Churner, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000) (same). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement."  Nyhuis, 204 F.3d at 73 (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules.  Spruill v. Gillis, 372 F.3d 218, 231 (3d Cir. 2004).  The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements.  Spruill, 372 F.3d at 227-32; see also Nyhuis, 204 F.3d at 77-78.  A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. Spruill, 372 F.3d at 227-32; see also Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000).

The BOP has established a multi-tier system enabling a federal prisoner to seek formal review of any aspect of his imprisonment.  28 C.F.R. §§ 542.10-542.19. Before seeking formal review, an inmate must attempt to informally resolve the issue with institutional staff by completing a BP-8 form.  28 C.F.R. § 542.13.  If informal resolution is unsuccessful, the inmate may present the issue to the Warden within twenty days of the date of the event giving rise to the administrative remedy request by filing a BP-9 form.  28 C.F.R. § 542.14.  The Warden has twenty days to

8

respond.  28 C.F.R. § 542.18.  An inmate dissatisfied with the Warden's response may submit an appeal on a BP-10 form to the BOP Regional Director within twenty calendar days.  28 C.F.R. § 542.15(a).  The Regional Director has thirty days to respond to an appeal.  28 C.F.R. § 542.18.  If the Regional Director denies the appeal, the inmate may then appeal to the BOP's Central Office, General Counsel, by submitting a BP-11 form within thirty calendar days.  28 C.F.R. § 542.15(a).  The Central Office has forty days to respond.  28 C.F.R. § 542.18.  No administrative remedy is considered fully exhausted until it is decided on its merits by the Central Office.  28 C.F.R. §§ 541.10-542.19.

Here, defendants argue that Henareh failed to properly exhaust his grievance in the prison's administrative review process prior to proceeding to federal court. (Doc. 16 at 13-15).  Defendants have supported this argument with record evidence, including the declaration of BOP Attorney Advisor Jennifer Knepper and the BOP Administrative Remedy Generalized Retrieval.  (Doc. 24-1 at 2-3, 7-17).  The record reflects that while in BOP custody, Henareh filed the following relevant administrative remedies.  On May 9, 2022, Henareh filed administrative remedy number 1119604-F1 at the institution level requesting his generic medication be changed to the brand-name medication.  (Id. at 19, 21-22).  On May 9, 2022, the Warden denied the remedy and Henareh appealed to the Regional Director.  (Id. at 20).  Upon review, the Regional Director rejected the appeal and advised Henareh to resubmit his appeal.  (Id. at 23).  Henareh failed to do so.  Instead, he returned to the institution level and submitted a new remedy requesting brand-name

9

medication and alleging complaints regarding staff members.  (<u>Id.</u> at 17).  The remedy was rejected and Henareh was directed to properly refile.  (<u>Id.</u>)  Once again, he failed to follow the directives and failed to refile the administrative remedy. Instead, Henareh bypassed the statutorily mandated procedures and proceeded to federal court.

In an attempt to refute defendants' argument in favor of summary judgment, Henareh merely recites caselaw that an inmate's failure to exhaust may be excused under limited circumstances and sets forth a conclusory statement that "[t]he facts on this case raise questions" as to whether administrative remedies were available to Henareh based on his claim that officials at FCI-Allenwood "have a history of alleged human rights violations."  (Doc. 25 at 2-3).  Henareh does not provide any evidence, via an affidavit, declaration, or other statement made under penalty of perjury to support a claim that the administrative remedy process was not available to him.  Rather, the record before the court demonstrates that the administrative remedy process at FCI-Allenwood was consistently available to Henareh.

The evidence confirms that Henareh commenced this action prior to completion of the BOP's administrative remedy procedure.  The PLRA mandates exhaustion of available administrative remedies before bringing suit and it is beyond the power of this court to excuse compliance with that requirement.  It is clear that Henareh failed to pursue the relevant request for administrative relief to the final level of review.  Henareh's failure to fully exhaust the available

administrative remedies prior to bringing this action compels an entry of summary judgment in favor of defendants.

Even had Henareh properly exhausted, his claims are subject to dismissal on the merits, as set forth below.

## IV.   **Rule 12(b)(6) Motion**

### A.   **Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests."  Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the

face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry.  See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

**B.   Discussion**

**1.   *First Amendment Retaliation Claim***

Alternatively, defendants move to dismiss Henareh's retaliation claim on the basis that there is no Bivens remedy available for this First Amendment claim following the United States Supreme Court's decision in Ziglar v. Abbasi, 582 U.S. 120, 137 S. Ct. 1843 (2017).  In Bivens, the Supreme Court recognized an implied damages remedy for a Fourth Amendment violation committed by federal officials, whose conduct was not encompassed by the statutory remedy available against

12

state actors under 42 U.S.C. § 1983.  See Bivens, 403 U.S. at 397.  Since the Bivens

decision, the Supreme Court has extended the Bivens remedy only twice: first, to a

claim for gender discrimination under the Fifth Amendment's Due Process Clause,

see Davis v. Passman, 442 U.S. 228, 248-49 (1979), and later to a claim for inadequate

prison medical care under the Cruel and Unusual Punishment Clause of the Eighth

Amendment, see Carlson v. Green, 446 U.S. 14, 18-23 (1980).

Under Abbasi, courts must first determine "whether a case presents a new

Bivens context" by asking "[i]f the case is different in a meaningful way from

previous Bivens cases decided by [the Supreme] Court[.]"  Id., 137 S.Ct. at 1859;

Bistrian v. Levi, 912 F.3d 79, 90 (3d Cir. 2018) (providing "[e]xamples of potentially

meaningful differences[:] the rank of the officers involved; the constitutional right at

issue; the generality or specificity of the official action; the extent of judicial

guidance as to how an officer should respond to the problem or emergency to be

confronted; the statutory or other legal mandate under which the officer was

operating; [and] the risk of disruptive intrusion by the Judiciary into the

functioning of other branches" (citation omitted)).  "If a case does not present a new

Bivens context, the inquiry ends there, and a Bivens remedy is available."  Shorter

v. United States, 12 F.4th 366, 372 (3d Cir. 2021) (citation omitted).  If, however, the

case presents a new Bivens context, then courts must next determine "whether any

'special factors counsel[ ] hesitation'" in permitting an extension of the doctrine.

See id. (quoting Abbasi, 137 S.Ct. at 1857-58).  "There may be many such factors,

but two are particularly weighty: the existence of an alternative remedial structure

and separation-of-powers principles." <u>Bistrian</u>, 912 F.3d at 90 (citing <u>Abbasi</u>, 137 S.Ct. at 1857-58).

The Supreme Court's decision in <u>Egbert v. Boule</u>, 596 U.S. ___, 142 S. Ct. 1793 (2022), reemphasized that the Court's continued refusal to "imply a similar cause of action for other alleged constitutional violations" is intentional— recognizing a new <u>Bivens</u> cause of action is "a disfavored judicial activity." <u>See Egbert</u>, 142 S. Ct. at 1797, 1803 (quoting <u>Abbasi</u>, 137 S. Ct. at 1857; <u>Hernandez</u>, 140 S. Ct. at 742-43). <u>Egbert</u> clarified that the two-step process laid out in <u>Abbasi</u> "often resolve[s] to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." <u>See id.</u> at 1803. In other words: if there is "any rational reason (even one) to think that Congress is better suited" to determine the propriety of a cause of action, then a <u>Bivens</u> action cannot proceed. <u>See id.</u> at 1805. The court must broadly inquire whether "there is any reason to think that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate'"—and if the answer is "yes," or even potentially yes, the plaintiff cannot recover under <u>Bivens</u>. <u>See id.</u> (quoting <u>United States v. Stanley</u>, 483 U.S. 669, 681 (1987)).

Here, Henareh alleges that defendants refused to provide him with brand-name medication in retaliation for filing lawsuits. The Supreme Court has never recognized a <u>Bivens</u> remedy under the First Amendment. <u>See Bistrian</u>, 912 F.3d at 95 (citing <u>Reichle v. Howards</u>, 566 U.S. 658, 663 n.4 (2012)). Additionally, the Third Circuit has explicitly held that <u>Bivens</u> does not extend to a retaliation claim under

14

the First Amendment.  See, e.g., Mack v. Yost, 968 F.3d 311, 319-25 (3d Cir. 2020) (declining to extend Bivens to a First Amendment retaliation claim in the prison workplace assignment context); Bistrian, 912 F.3d at 95-96 (declining to extend Bivens to a First Amendment retaliation claim in the prison restrictive housing context).

Because Henareh's First Amendment retaliation claim presents a new context, the court must determine, under Abbasi, whether there are any special factors that counsel hesitation in extending Bivens to these claims.  See Mack, 968 F.3d at 319-20. As stated above, while there may be many special factors, two (2) are "'particularly weighty': the availability of an alternative remedial structure and separation-of-powers concerns."  See id. at 320 (quoting Bistrian, 912 F.3d at 90). With respect to the availability of an alternative remedial structure, federal inmates have alternative remedies for their retaliation claims in the form of the BOP's administrative remedy program.  See 28 C.F.R. §§ 542.10-542.19; Mack, 968 F.3d at 320 (stating that the federal inmate had, as an alternative remedial structure, "access to the BOP's administrative remedy program").  And Egbert makes clear that the question for this court is not whether a Bivens damages remedy would be more effective, nor even whether the existing remedy is sufficient.  "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a Bivens remedy."  Egbert, 142 S.Ct. at 1807.  The

existence of the BOP's administrative remedy process "independently forecloses" a Bivens remedy in this new context.  See id. at 1806.

With respect to separation-of-powers concerns, this court has also previously recognized that courts "'afford[ ] a level of deference to the decision making of prison officials,'" recognizing that "'day-to-day administrative decisions have been committed solely to the province of the BOP.'"  See Freedland v. Mattingly, No. 20-cv-00081, 2021 WL 1017253, at *8 (M.D. Pa. Mar. 17, 2021) (quoting Mack, 968 F.3d at 323); Turner v. Safley, 482 U.S. 78, 84-85 (1987) (recognizing that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform[,]" that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government[,]" and that this "task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint" (internal citation omitted)).  Besides "those serious separation of powers concerns, recognizing a Bivens remedy would likely cause an increase of suits by inmates, increased litigation costs to the government, ad…burdens on individual prison employees to defend such claims." Bistrian, 912 F.3d at 95 (citation and internal quotation marks omitted).  Thus, in following the guidance in Abassi, the court "must be reluctant to 'establish whole categories of cases in which federal officers must defend against personal liability claims in the complex sphere of litigation.'"  See id. (quoting Abbasi, 137 S.Ct. at 1858)  For all of these reasons, the

court finds that the special factors counsel against an expansion of <u>Bivens</u> in this new context.  See <u>Reichle</u>, 566 U.S at 663 n.4 (stating that "[w]e have never held that <u>Bivens</u> extends to First Amendment claims" (citations omitted)).

Accordingly, assuming, *arguendo*, that Henareh properly exhausted his administrative remedies, the court would decline to extend a <u>Bivens</u> remedy to his First Amendment relation claim and would dismiss this claim.  See <u>Bistrian</u>, 912 F.3d at 96 (rejecting an extension of <u>Bivens</u> to a federal prisoner's First Amendment retaliation claim and noting that this conclusion "aligns with a strong trend in district courts, post-<u>Abbasi</u>, holding that a <u>Bivens</u> retaliation claim under the First Amendment should not be recognized").

### 2. *Eighth Amendment Deliberate Indifference Claim*

We next consider Henareh's Eighth Amendment claim.  In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  <u>Natale v. Camden Cty. Correctional Facility</u>, 318 F.3d 575, 582 (3d Cir. 2003) (citing <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999)).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention."  <u>Monmouth Cty. Corr. Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987).  In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth

17

amendment." Id. (citation omitted).  A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment.  See Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988); see also McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976), cert. denied, 450 U.S. 1041 (1981).

Assuming that Henareh's allegations qualify as a serious medical condition for purposes of the Eighth Amendment analysis, the court must determine whether he has established a deliberate indifference to that need.  In the complaint, Henareh alleges that defendants gave him the wrong medication by refusing to change his medication from generic to brand-name.  The decision to prescribe generic over brand-name medication does not amount to deliberate indifference, but rather is "a classic example of a matter for medical judgment" that "does not represent cruel and unusual punishment."  Estelle v. Gamble, 429 U.S. 97, 107 (3d Cir. 1976).  Given the considerable latitude afforded prison authorities in the treatment of prisoners, a prison doctor's decision to prescribe one drug over another simply cannot give rise to an Eighth Amendment claim.  See White v. Napoleon, 897 F.2d 103, 110 (3d Cir.

1990) (doctor's choice of one drug over another is not actionable); Spruill, 372 F.3d

at 235 (holding that "mere disagreement as to the proper medical treatment" is

insufficient to state a constitutional violation); Gause v. Diguglielmo, 339 F. App'x

132 (3d Cir. 2009) (dispute over choice of medication does not rise to the level of an

Eighth Amendment violation).[5]  Henareh fails to allege facts from which it can

reasonably be inferred that defendants exhibited deliberate indifference to his

medical needs.  As such, even had Henareh properly exhausted his administrative

remedies, the Eighth Amendment claim would be dismissed on the merits.

**V.**      **Leave to Amend**

Before dismissing a complaint for failure to state a claim upon which relief

may be granted, the court must grant Henareh leave to amend his complaint unless

amendment would be inequitable or futile.  See Grayson v. Mayview State Hospital,

293 F.3d 103, 114 (3d Cir. 2002).  The court finds that amendment would be futile

because Henareh cannot remedy the jurisdictional, legal, and factual defects in the

complaint: that sovereign immunity bars the court's subject matter jurisdiction over

the defendants in their official capacities, that Bivens does not extend to the First

---

[5]  With respect to the decision to prescribe generic medication, we note that
"FDA-approved generic medicines work in the same way and provide the same
clinical benefit and risks as their brand-name counterparts.  A generic medicine is
required to be the same as a brand-name medicine in dosage, safety, effectiveness,
strength, stability, and quality, as well as in the way it is taken."  See U.S. Food &
Drug Administration, Generic Drug Facts, available at:
https://www.fda.gov/drugs/generic-drugs/generic-drug-facts (last accessed July 10,
2023).

Amendment retaliation claim, and that Henareh failed to state a cognizable Eighth

Amendment deliberate indifference claim.

## VI.   **Federal Rule of Civil Procedure 4(m)**

Rule 4(m) sets forth the following time frame a plaintiff has to serve a

defendant with the summons and copy of the complaint:

> If a defendant is not served within 90 days after the complaint is filed,
> the court -- on motion or on its own after notice to the plaintiff -- must
> dismiss the action without prejudice against that defendant or order
> that service be made within a specified time. But if the plaintiff shows
> good cause for the failure, the court must extend the time for service
> for an appropriate period.

FED. R. CIV. P. 4(m).

The John Doe individual was named as a defendant in the complaint that was

filed on July 26, 2022 and, to date, has not been properly been identified or served in

this case.  The court must engage in a two-step process in determining whether to

dismiss the non-served defendant or grant Henareh additional time to effect

service.  "First, the district court should determine whether good cause exists for an

extension of time.  If good cause is present, the district court must extend time for

service and the inquiry is ended.  If, however, good cause does not exist, the court

may in its discretion decide whether to dismiss the case without prejudice or extend

time for service."  Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1305 (3d Cir.

1995).  Good cause requires good faith on the part of the party seeking an

enlargement and some reasonable basis for noncompliance with the time specified

in the rules.  MCI Telecomm. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1097 (3d Cir.

20

1995).  In determining whether good cause exists, a court's "primary focus is on the plaintiff's reasons for not complying with the time limit in the first place."  Id. Although prejudice is a factor to be considered, the absence of prejudice to the opposing party alone does not constitute good cause to excuse late service.  Id.

In the present matter, Henareh failed to establish good cause.  On September 22, 2022, the court ordered Henareh to provide additional information concerning the identity of the John Doe defendant and warned him that failure to comply may result in the dismissal of plaintiff's claims against the defendant pursuant to Rule 4(m).  (Doc. 12 ¶ 10).  Henareh failed to do so.  Therefore, after the expiration of the ninety-day time period set forth in Rule 4(m), the court again notified Henareh that the action against the John Doe defendant was subject to dismissal and directed him to show cause why the action against this defendant should not be dismissed pursuant to Rule 4(m).  (Doc. 26).  Henareh failed to respond to the show cause order and, in general, his *pro se* status is not good cause to excuse his failure to timely identify and serve this defendant.  Veal v. United States, 84 F. App'x 253, 256 (3d Cir. 2004).  Based upon the lack of *any* explanation for his failure to adhere to the requirements of Rule 4, the court finds that Henareh failed to establish good cause.

If a plaintiff cannot show good cause for his failure to serve a defendant within ninety days, a district court may either dismiss the defendant, or exercise its discretion to order that service be made within a specific time.  Petrucelli, 46 F.3d at 1305; see also FED. R. CIV. P. 4(m).  It is Henareh's responsibility to properly

identify all defendants, and provide accurate mailing addresses for the defendants, in a timely fashion.  (<u>See</u> Doc. 12 ¶ 9) (advising Henareh that failure to properly name a defendant, or provide an accurate mailing address for a defendant, may result in dismissal of the claims against that defendant pursuant to Federal Rule of Civil Procedure 4(m)).  In light of Henareh's lack of good faith effort to properly identify or serve the John Doe defendant despite this court's warning of the possible consequences, including dismissal, the court concludes that dismissal is appropriate under the present circumstances.  Accordingly, the unidentified, non-served defendant will be dismissed from this action.

**VII.** <u>**Conclusion**</u>

The court will grant defendants' motion (Doc. 15) in its entirety.  The court will also dismiss the action against the John Doe defendant for insufficient service of process pursuant to Federal Rule of Civil Procedure 4(m).

An appropriate order shall issue.

<u>/S/ CHRISTOPHER C. CONNER</u>
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:       July 10, 2023